**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
　　　　jvenditti@bursor.com
　　　　idiaz@bursor.com

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CODY CONNOLLY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE BLACK TUX, LLC, | <u>JURY TRIAL DEMANDED</u> |
| Defendant. | |

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Cody Connolly ("Plaintiff") brings this action on behalf of himself, and all others similarly situated against The Black Tux, LLC ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this putative class action complaint on behalf of himself and all other similarly situated who were unlawfully charged "junk fees" when they shopped online at Defendant's website, www.theblacktux.com (the "Website"), to rent formal attire.

2.      Defendant specializes in formal attire. Through its Website, Defendant provides consumers with an array of formal clothing pieces, such as suits, ties, bows, and shoes, for both purchase and rental. When consumers choose to review Defendant's selection of rental pieces on the Website, Defendant displays the rental price of each clothing item in the first instance that consumers view the item. However, Defendant fails to display a hidden "Damage Waiver" Fee (the "Fee" or "Junk Fee") when it first advertises the rental price of any item.

3.      Instead, Defendant waits until consumers have gone through the laborious process of selecting various clothing items to create the perfect outfit for a special occasion, including providing sizing information for each of those clothing items, only to display this mandatory Fee at the last step of the rental process at the checkout page.

4.      Thus, consumers who rent items from Defendant are lured onto the Website by the promise of a low price that does not exist because that advertised price fails to include various, mandatory fees ultimately charged at checkout. This type of "drip pricing"—illegal in California for years—has recently become the subject of a proposed national ban on junk fees.

5.      As detailed herein, Defendant adds the mandatory Fees on formal attire rentals. The Fees are not disclosed in the advertised prices, misrepresenting to consumers the total price of the products they intend to buy or rent. As a result, consumers are blindsided by the additional Fees, requiring them to reevaluate or forgo their rental plans, or to begrudgingly expand their budgets.

6.      In or around July 2024, Plaintiff rented several pieces of formal attire from Defendant's Website, including a Shawl Collar Tuxedo Jacket, Black Tuxedo Pants, a Cotton

Dress Shirt, Solid Charcoal Dress Socks, Silver Onyx Button Studs, and a Black Butterfly Bow Tie. Altogether, Defendant advertised the price of these items as $224.00, exclusive of tax, on its Website. However, when Plaintiff added these items to his cart to rent, a "Rental Damage Waiver" of $12.00 was added to the total cost of the items. The "Rental Damage Waiver" was not included in the original price of the items advertised on Defendant's Website.

7.    At all relevant times, Defendant knew, or should have known, that the prices it advertises on its website do not represent the total price charged to consumers, including all mandatory fees.

8.    Advertising products at a price that does not include all mandatory fees, with the exception of taxes imposed by the government, and shipping costs incurred in shipping a product to a consumer, violates California's consumer protection laws, including the Consumers Legal Remedies Act pursuant to Cal. Civ. Code § 1770(a)(29)(A) (the "Honest Pricing Law"), among other statutes.

9.    As a result of Defendant's failure to take appropriate or remedial action with respect to the Class, and affirmative misrepresentations of material fact, Defendant has caused Plaintiff and members of the Class to (1) bear mandatory expenses and costs they otherwise should not have had to bear, (2) be misled as to the actual price of the product, and (3) be subjected to "bait and switch" pricing. Plaintiff seeks to enjoin Defendant's unlawful and unfair practices and seeks restitution for members of the Class for the losses they have incurred. Plaintiff also seeks attorneys' fees, costs, and expenses.

10.    For the foregoing reasons, Plaintiff brings this action individually and on behalf of all others similarly situated based on Defendant's unlawful failure to display the Fee with the initially advertised rental prices, seeking damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for violation of: (1) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; and (3) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*

**THE PARTIES**

11.     Plaintiff Cody Connolly ("Plaintiff") is a California citizen residing in Walnut Creek, California.  In or around July 2024, Plaintiff Connolly rented formal attire from Defendant's Website while located in Walnut Creek, California.  Specifically, Plaintiff rented several pieces of formal attire from Defendant's Website, including a Shawl Collar Tuxedo Jacket, Black Tuxedo Pants, a Cotton Dress Shirt, Solid Charcoal Dress Socks, Silver Onyx Button Studs, and a Black Butterfly Bow Tie.  Altogether, Defendant advertised the price of these items as $224.00, exclusive of tax, on its Website.  Specifically, Defendant advertised the price of the Shawl Collar Tuxedo Jacket as $119.00, the Black Tuxedo Pants as $50.00, the Cotton Dress Shirt as $25.00, the Solid Charcoal Dress Socks as $10.00, the Silver Onyx Button Studs as $10.00, and the Black Butterfly Bow Tie as $10.00.  When browsing and selecting his formal attire items for rent, Plaintiff relied on the advertised prices of each of the clothing items he rented when deciding whether to rent that item or not.  However, when Plaintiff added these items to his cart to rent, a "Rental Damage Waiver" of $12.00 was added to the total cost of the items.  The "Rental Damage Waiver" was not included in the original price of the items advertised on Defendant's Website.  Thus, ultimately, Plaintiff paid the rental price of each of the clothing pieces he had selected, but also had to pay the mandatory Rental Damage Waiver Fee at checkout—despite the fact that Defendant waited until the last possible moment to reveal that mandatory Fee, in violation of the CLRA's Honest Pricing Law and other California consumer protection statutes.

12.     Defendant The Black Tux, LLC ("Defendant" or "Black Tux") is a Delaware corporation with its principal place of business in Gardena, California.  At all times relevant to the allegations herein, Defendant has developed, manufactured, advertised, marketed, made available for rent or sail, and/or distributed formal attire to consumers in California and throughout the United States.  Defendant has rented and/or sold its formal attire products in, and has transacted in and throughout, California and the United States at all times during the Class Period.  In addition, at all relevant times herein, Defendant has owned, operated, and controlled the Website, where it, *inter alia*, markets and rents and/or sells the formal attire products.

13.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and at least some members of the proposed Nationwide Class are citizens of a state different from Defendant.

15.     This Court has personal jurisdiction over the parties because Defendant maintains its principal place of business in California.  Additionally, Plaintiff rented his formal attire items from Defendant's Website while in California and submits to the jurisdiction of the Court.

16.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Also, Plaintiff resides in this District and rented Defendant's formal attire items in this District.  Moreover, Defendant marketed, advertised, rented or sold, and distributed the formal attire items, which are the subject of the present complaint, to Plaintiff and members of the Class in this District.

## FACTUAL ALLEGATIONS

**A.     Background On California's Honest Pricing Law**

17.     On July 1, 2024, the California Legislature amended the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et. seq.*, making it illegal "for most businesses to advertise or list a price for a good or service that does not include all required fees or charges."[1]

18.     This amendment to the CLRA was made to rein in "drip pricing" by "bring[ing] price transparency to all sectors of the state's economy."  California Bill Analysis, S.B. 478

---

[1] State of California Department of Justice, *SB 478 Hidden Fees*, https://oag.ca.gov/hiddenfees.

Assem., 7/11/2023.  Drip pricing "is a pricing technique in which firms advertise only part of a product's price and reveal other charges later as the customer goes through the buying process. The additional charges can be mandatory charges, such as hotel resort fees and—critically—Defendant's "Damage Waiver Fee" at issue here, or fees for optional upgrades and add-ons.[2]

19.    In particular, the amendment was a response to the issue of when "a seller uses an artificially low headline price to attract a customer and usually either discloses additional required fees in smaller print, or reveals additional charges later in the buying process."[3]  The authors of the amendment emphasized that "[h]iding required fees is nothing more than a deceptive way of hiding the true price of a good or service.  Transparency and full disclosure in pricing are crucial for fair competition and consumer protection."[4]

20.    Further, the California Legislature has recognized that drip pricing on price-comparison marketplaces, like Defendant's Website here, are particularly harmful to consumers because "[w]hen merchants include hidden or 'junk fees' in the purchase price of goods and services after putting out a much lower advertised price (the bait), consumers are often misled and kept from properly assessing the best prices, thereby hindering the market, especially online." California Bill Analysis, S.B. 1524 Sen., 6/25/2024.  This defeats the entire purpose of a price-comparison website as the consumer does not get an accurate picture of the prices being compared. As such, a consumer cannot make a truly informed purchasing decision—despite the express purpose of a price-comparison website.

21.    Thus, California's Honest Pricing Law benefits consumers by enabling them to conduct "direct, apples-to-apples price comparison" between different vendors so that they may make "informed purchasing decisions based on their preferences and budgets."[5]  It also ensures

---

[2] *See* Federal Trade Commission, *The Economics of Drip Pricing* (May 21, 2012), *available at* https://www.ftc.gov/news-events/events/2012/05/economics-drip-pricing.

[3] State of California Department of Justice, *SB 478 Hidden Fees*, *supra.*

[4] *Id.*

[5] State of California Department of Justice, *SB 478 Hidden Fees*, *supra.*

businesses engage in fair competition by competing based on the "price and value offered, rather than on their ability to deceive consumers into paying junk fees."[6]

22.     Relying on the drip pricing practice, websites like Defendant's can effectively squeeze every last penny from a consumer's wallet from the start of the purchase process to the circuitous end.  This is because "a shopper may have put so much time into the shopping process that by the time additional fees or charges are disclosed they have already made up their minds to make a purchase."[7]

23.     Indeed, "[c]ompanies may utilize a price dipping approach in order to entice a customer into starting the purchase process, at which point the customer may not want to restart his or her search, once they find out the added costs."[8]

24.     Defendant's multi-step checkout process does exactly that.  Defendant's checkout process allows it to slip the additional mandatory Fees into the final costs to be paid, presenting the Fees in a subtle line item for the first time during the final step of the rental and/or purchasing process, at the bottom of the checkout page.

**B.     Defendant's Website Charges Hidden Mandatory "Junk Fees"**

25.     When a user navigates to Defendant's Website to rent formal attire, they are presented with a catalog of formal attire items to either purchase or rent.  Defendant displays the price to rent each item from the beginning when a user first sees the item listed on the Website. *See, e.g.*, Figures 1 and 2 (red markings added for emphasis).

---

[6] *Id.*

[7] Investopedia, *Drip Pricing: What It Means, How It Works* (Jan. 24, 2023), https://www.investopedia.com/terms/d/drip-pricing.asp.

[8] *Id.*

1
2
3
4
5
6
7
8
9
10
11



*Figure 1*

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26



*Figure 2*

27
28

26.    Although Defendant lists the rental and purchase price of each of its items in the catalog of formal attire items shown to consumers browsing its Website, it fails to disclose the mandatory Fees until the final step of the rental and/or purchasing process.  *See id.*

27.    Once a user selects an item to view, Defendant again displays the rental price of the item without disclosing the mandatory Fee.  *See, e.g.*, Figures 3 and 4 (red markings added for emphasis).



*Figure 3*



*Figure 4*

28.    It is not until a user selects all the items they wish to rent or buy, including the size of the clothing item they wish to rent or buy, and gets to the final step of the rental/purchasing

process that Defendant discloses the mandatory Fee in a subtle line item provided near the bottom of the checkout page. *See* Figures 5 and 6 (some red markings added for emphasis).



***Figure 5***

***Figure 6***

29.     However, by the time Defendant discloses this Fee, consumers have already spent their time carefully reviewing and selecting the clothing items they wish to rent or buy to form the

perfect outfit for a special event within their intended budgets.  In doing so, users rely on Defendant's previously advertised rental prices when deciding whether to pick any one item to rent.  Thus, Defendant's omission of the mandatory Fee until the very end of the rental process is an unfair practice designed to string consumers along with the false impression of a lower rental price and prevent consumers from being able to make an accurate comparison between Defendant's rental prices and its competitor's rental prices.

30.     Moreover, Defendant's failure to disclose the mandatory Damage Waiver Fee on its Website until the last step of the rental/purchasing process directly violates the CLRA pursuant to Cal. Civ. Code § 1770(a)(29)(A) (the "Honest Pricing Law"), which prohibits Defendant from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than" government-imposed taxes or fees and *bona fide* postage or shipping charges.  Cal. Civ. Code § 1770(a)(29)(A).  The Damage Waiver Fee is neither a government-imposed fee nor a fee for postage and shipping.  As such, Defendant is obligated to disclose this Fee along with the initial advertised price.  It is not enough for Defendant to do so only at the end of the rental/purchasing process, on the checkout page.  But that is exactly what Defendant does.  At no point prior to this final step of the checkout process does Defendant disclose the mandatory Damage Waiver Fee.  Instead, it nickels-and-dimes its consumers one hidden fee at a time.  Thus, Defendant's dishonest drip pricing scheme is a direct violation of the CLRA's Honest Pricing Law.

**C.    Plaintiff's Experience**

31.     In or around July 2024, Plaintiff visited the Website to rent formal attire.

32.     During this visit, Plaintiff rented several pieces of formal attire from Defendant's Website, including a Shawl Collar Tuxedo Jacket, Black Tuxedo Pants, a Cotton Dress Shirt, Solid Charcoal Dress Socks, Silver Onyx Button Studs, and a Black Butterfly Bow Tie.

33.     Altogether, Defendant advertised the price of these items as $224.00, exclusive of tax, on its Website.  Specifically, Defendant advertised the price of the Shawl Collar Tuxedo Jacket as $119.00, the Black Tuxedo Pants as $50.00, the Cotton Dress Shirt as $25.00, the Solid Charcoal Dress Socks as $10.00, the Silver Onyx Button Studs as $10.00, and the Black Butterfly Bow Tie

as $10.00.  When browsing and selecting his formal attire items for rent, Plaintiff relied on these advertised prices for each of these items when deciding whether to rent that item or not.

34.     However, when Plaintiff went to checkout after adding these items to his cart to rent, a "Rental Damage Waiver" of $12.00 was added to the total cost of the items.  This final stage of the checkout process was the first time Defendant disclosed this mandatory Fee.

35.     The "Rental Damage Waiver" was not included in the original rental prices advertised on Defendant's Website for the items Plaintiff selected to rent.

36.     Thus, ultimately, Plaintiff paid the rental price of each of the clothing pieces he had selected, but also had to pay the mandatory Rental Damage Waiver Fee at checkout—despite the fact that Defendant waited until the last possible moment to reveal that mandatory Fee, in violation of the CLRA's Honest Pricing Law and other California consumer protection statutes.

37.     As such, Plaintiff was deceived into thinking that his rental would cost only the sum of the advertised prices for the items he had selected to rent (plus any government-imposed taxes, to be determined at a fixed rate).

38.     Plaintiff's experience is not an isolated incident.  Defendant uniformly fails to include the "Damage Waiver Fee" in the prices that it advertises on its Website prior to the checkout page.  Thus, the facts giving rise to Plaintiff's claims are materially the same as the Class he seeks to represent.  In all cases, these hidden fees make it difficult for consumers to compare prices offered by different sites, and consistently results in consumers spending considerably more than they otherwise would.

## CLASS ALLEGATIONS

39.     **Class Definition:** Plaintiff brings this action on behalf of himself and all others similarly situated, as a class action pursuant to Federal Rule of Civil Procedure 23.  The classes Plaintiff seeks to represent are defined as follows:

(a)     ***Nationwide Class.***  Plaintiff seeks to represent a class of similarly situated individuals, defined as all persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, rented any item

from the Black Tux Website and paid Defendant's mandatory Damage Waiver Fee that was not advertised with the initial advertised price of the item rented (the "Nationwide Class").

(b)    ***California Subclass.***  Plaintiff also seeks to represent a subclass comprised of all Class Members residing in California who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, rented any item from the Black Tux Website and paid Defendant's mandatory Damage Waiver Fee that was not advertised with the initial advertised price of the item rented (the "California Subclass").

40.    Excluded from the Class and Subclass are: (1) Defendant and its officers, directors, employees, principals, affiliated entities, controlling entities, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of their immediate families.

41.    Plaintiff reserves the right to amend the definition of the Class and Subclass if discovery or further investigation reveals that the Class and/or Subclass should be expanded or otherwise modified.

42.    **Numerosity.**  The number of people within the Class is substantial and believed to be in the hundreds of thousands.  It is therefore impractical to join each member of the Class as a named plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

43.    **Commonality and Predominance.**  There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class Member, including, but not limited to, the following:

(a)    Whether the Fee charged is uniform across all rentals;

(b)    Whether the Fee charged is a mandatory fee;

(c)    Whether the Fee charged is a government-imposed or shipping fee;

(d)    Whether Defendant's conduct is unlawful under California's consumer protection statutes; and

(e)    Whether Plaintiff and the Members of the Class and Subclass are entitled to actual damages for the aforementioned violations.

44.    **Typicality.**  Plaintiff's claims are typical of the claims of the Class because Plaintiff, like the Members of the Class, rented formal attire through Defendant's Website at an initial advertised price and was later forced to pay an additional, mandatory fee at checkout that was not included in, or disclosed with, the initial advertised price nor imposed by the government or necessary for shipping goods.

45.    **Adequate Representation.**  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent. Plaintiff has retained competent counsel experienced in prosecuting class actions, and Plaintiff's counsel intends to prosecute this action vigorously.  The interest of the Members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

46.    **Superiority.**  The class action mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Members of the Class.  Each individual Member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

47.    Additionally, class certification of the Nationwide Class and California Subclass is appropriate under Fed. R. Civ. Proc. 23(b)(2) because Defendant has acted on or refused to act on

grounds generally applicable to the Class and Subclass, making appropriate declaratory, injunctive, and equitable relief with respect to the Plaintiff and the Class and Subclass as a whole.

48.     Without a class action, Defendant will continue a course of action that will result in further injury to Plaintiff and members of the Class and Subclass, and will likely retain the benefits of its wrongdoing.

49.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***
**(On Behalf Of The Nationwide Class And California Subclass)**

50.     Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as if fully set forth herein.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Subclass against Defendant.

52.     Cal. Civ. Code § 1770(a)(29)(A) prohibits "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges other than either of the following: (i) [t]axes or fees imposed by a government on the transaction [or] (ii) [p]ostage or carrier charges that will be reasonably or actually incurred to ship the physical good to the consumer."

53.     As alleged, Defendant advertises and displays the price for renting and purchasing its formal attire on its Website without disclosing the mandatory Damage Waiver Fee until the very last step of the rental/purchasing process, on the checkout page.

54.     The Fee charged is mandatory because a consumer is not able to checkout and complete a rental without paying that Fee.

55.     The Fee charged is neither a government-imposed fee nor a fee for shipping a physical good.

56.     By committing the acts and practices alleged herein, Defendant has violated the CLRA's Honest Pricing Law pursuant to Cal. Civ. Code § 1770(a)(29)(A).

57.     Plaintiff and Class Members were injured by Defendant's drip-pricing scheme because they reasonably relied on Defendant's advertised price for the items they rented.  Further, Plaintiff and Class Members were not reasonably made aware that they were required to pay a mandatory Fee at the first instance when Defendant advertised the rental prices, but instead, this information was only provided to consumers by Defendant at the very end of the rental/purchasing process, in a single line-item references inconspicuously disclosed near the bottom of the checkout page.  As a result, Plaintiff and the Class paid prices for the items they rented that did not conform with the initial advertised rental price and thus suffered an injury under this statute.  As such, Plaintiff and the Class spent money on goods or services that they would not have paid for, or would have paid for on different terms (*i.e.*, would have paid less for), had they known the true costs of the items they rented from the beginning of and throughout the process of viewing and selecting such items from Defendant's Website.

58.     On or around February 27, 2025, a CLRA notice letter was sent to Defendant, The Black Tux, LLC, that complied in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA with respect to the hidden Damage Waiver Fee and its Website's unlawful drip pricing, and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter, which was delivered to and received by Defendant on March 3, 2025, stated that it was sent on behalf of Plaintiff and all other similarly situated individuals.  Defendant failed to remedy the issues raised in the notice letter.  Accordingly, Plaintiffs seek damages from Defendants for their violations of the CLRA.

59.     Further, injunctive relief is appropriate, and indeed necessary, to require Defendant to provide full and accurate disclosures regarding the price of the items offered for sale or rent on its Website, in compliance with the CLRA's Honest Pricing Law, so that Plaintiffs and Class members can reasonably rely on Defendant's representations as well of those of Defendant's competitors who may then have an incentive to follow Defendant's deceptive practices, further misleading consumers.

60.     Accordingly, pursuant to Civ. Code § 1780, Plaintiff and the Class and Subclass

seek: (a) actual damages in an amount to be determined at trial; (b) an order enjoining Defendant from continuing its violative practice; (c) restitution of all money and property lost by Plaintiff and the Class as a result of Defendant's unlawful conduct; (d) punitive damages; (e) any other relief that the Court deems proper; and (f) Plaintiff's and the Class's attorneys' costs and fees.

**COUNT II**
**Violation of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf Of The Nationwide Class And California Subclass)**

61.     Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as if fully set forth herein.

62.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Subclass against Defendant.

63.     California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or fraudulent business act or practice."  By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210 by engaging in unlawful, unfair, and fraudulent conduct.

64.     Defendant violated the UCL's proscription against engaging in **Unlawful Business Practices** by violating the CLRA, Cal. Civ. Code § 1770(a)(29)(A).

65.     As discussed more fully above, Defendant violated the CLRA by failing to disclose its mandatory Fee when it initially advertised the rental price for its formal attire via its Website.

66.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

67.     Defendant also violated the UCL's prohibition against engaging in **Unfair Business Practices**.  Defendant's acts, omissions, and non-disclosures as alleged herein constituted "unfair" business acts and practices within the meaning of Bus. & Prof. Code §§ 17200, *et. seq.*, as the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

68.     For example, Defendant's pricing scheme is dishonest and harms consumers by preventing them from making meaningful comparisons between Defendant's rental prices and Defendant's competitors' rental prices given that Defendant is not transparent about the full cost of its service.  Defendant's practice is likewise deceitful because it causes users to expect to pay a certain, lower price for a rental, only to later find a higher price is owed at the very last step of the rental process.

69.     There were reasonably available alternatives to further Defendant's legitimate business interest such as disclosing the Fee charged along with the initial advertised prices of the rentals.  There are no legitimate business purposes served by Defendant's hidden Fee.

70.     Plaintiff and the Class could not have reasonably avoided the injury suffered by each of them.

71.     The gravity of the consequences of Defendant's conduct outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives to its pricing and advertising practices.  Such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Class.

72.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and the Class seek an order requiring Defendant to (a) provide restitution to Plaintiff and the Class; (b) disgorge all revenues obtained as a result of the violations of the UCL; (c) cease engaging in the violative practices by way of an injunction; and (d) pay Plaintiff's attorneys costs and fees.

**COUNT III**
**Violation of California's False Advertising Law ("FAL"),**
**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*
**(On Behalf Of The Nationwide Class And California Subclass)**

73.     Plaintiff hereby re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as if fully set forth herein.

74.     Plaintiff brings this claim individually and on behalf of the members of the proposed Nationwide Class and California Subclass against Defendant.

75.     California Business and Professions Code §§ 17500, *et seq.*, also known as the California False Advertising Law (the "FAC"), makes it "unlawful for any person, … corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property … or anything of any nature whatsoever … to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatsoever, including over the Internet, any statement concerning that … personal property … or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable case should be known, to be untrue or misleading …."  Cal. Bus. & Prof. Code § 17500.

76.     As alleged herein, Defendant disseminated or caused to be disseminated deceptive advertising of the cost of products on its Website.  Such advertising, including but not limited to, product advertising and marketing, failed to include all mandatory fees in the advertised price of products on its Website, when in fact additional fees—specifically, the Damage Waiver Fee— would be incurred when a consumer rented the products.

77.     Defendant continues to disseminate or cause to be disseminated such deceptive prices as alleged herein.

78.     The false and deceptive statements regarding the true cost of products on Defendant's Website are likely to deceive the consuming public.

79.     While disseminating or causing to be disseminated the false and deceptive statements regarding the costs of its products, Defendant knew or should have known that the statements were false or misleading.

80.     As a direct and proximate result of Defendant's false and misleading advertising, Plaintiff and members of the Class and Subclass have been injured.  Plaintiff and members of the Class and Subclass would not have rented the products from Defendant at all (*i.e.*, because they would have rented the products from a different retailer that rivaled the actual prices that Plaintiff and Class Members were charged), or would not have rented the products on the same terms (*i.e.*,

would have paid less for them), had they known the true costs of the items they rented from the beginning of and throughout the process of viewing and selecting such items from Defendant's Website.

81.     Defendant's false and misleading advertising as alleged above presents a continuing threat to Plaintiff and other members of the public because Defendant continues to disseminate and advertise false and misleading product totals and will not cease doing so unless and until enjoined or restrained by this Court.

82.     Pursuant to California Business & Professions Code § 17535, Plaintiff seeks an order enjoining Defendant from continuing to engage, use, or employ any act prohibited by Business and Professions Code §§ 17500, *et seq*.

83.     Plaintiff's success in this action will enforce important rights affecting the public interest. Plaintiff herein takes upon himself enforcement of these laws and lawful claims. There is a financial burden involved in pursing this action, the action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing him to pay attorneys' fees from the recovery in this action. Attorney's fees are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant as follows:

(a)     For an order certifying the Class and naming Plaintiff as representative of the Class, and Plaintiff's Counsel as Class Counsel;

(b)     For an order declaring that Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable and monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper;

(h)     For an order awarding Plaintiff and the Class their reasonable attorney's fees, expenses, and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.


Dated:  July 16, 2025                          **BURSOR & FISHER, P.A**.


By:    _/s/ Julia K. Venditti_
            Julia K. Venditti

L. Timothy Fisher (State Bar No. 191626)
Julia K. Venditti (State Bar No. 332688)
Ines Diaz Villafana (State Bar No. 354099)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
            jvenditti@bursor.com
            idiaz@bursor.com

**CLRA VENUE DECLARATION**

I, Julia K. Venditti, declare as follows:

      1.     I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am an associate attorney at Bursor & Fisher, P.A., counsel of record for Plaintiff.  Plaintiff Cody Connolly alleges that he resides in Walnut Creek, California.  I have personal knowledge of the facts set forth in this declaration and as called as a witness, I could and would completely testify thereto under oath.

      2.     The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) because Plaintiff resides in this District.  Further, a substantial portion of the events alleged in the Complaint occurred in the Northern District of California, as Plaintiff alleges that he rented the products at issue from Defendant's Website while in this District.  Additionally, Defendants advertised, marketed, manufactured, distributed, and/or rented or sold its falsely advertised products to Plaintiff and Class Members from this District.

      I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed at Walnut Creek, California this 16th day of July, 2025.

                          */s/ Julia K. Venditti*
                            Julia K. Venditti